# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ABDULLAH L. HA'MIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CASE NO. 3:05-0358 |
| vs. | ) JUDGE ECHOLS / KNOWLES |
| | ) |
| | ) |
| MONTGOMERY COUNTY SHERIFF'S | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendant's Motion For Summary Judgment. Docket Entry No. 27. In support of that Motion, Defendant has contemporaneously filed a Memorandum of Law and a Statement of Undisputed Material Facts. Docket Entry Nos. 29-1 and 28. Defendant has additionally submitted the Affidavit with Exhibits of Jail Chaplain Ted Denny. Docket Entry Nos. 30-1 to 30-4.

Plaintiff has not responded to Defendant's Motion or to the Statement of Undisputed Material Facts.

Plaintiff, who at all times relevant to the case at bar was an inmate in the custody of the Montgomery County Jail, filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment rights of Freedom of Religion. Docket Entry No. 1. Specifically, Plaintiff averred that the Jail's Rule and Handbook provides for religious

1

services for Muslims and that such services were "not allowed" by officials of Defendant. Docket Entry No. 1, p. 5. Additionally, Plaintiff averred that Defendant's officials had "preferences for localized forms of religion over non-localized forms," citing T.C.A. § 41-21-211 which, according to Plaintiff, "furnishes Bibles for Christians but not Qurans for Muslims." *Id.*

Plaintiff originally sued Montgomery County Sheriff Norman Lewis, "Lt. Armstrong," "Chaplain Ted Denny," "Sgt. Reynolds," and "Sgt. Smothers," in their individual and official capacities. *Id.*

Plaintiff filed an application to proceed in forma pauperis (Docket Entry No. 2), which was granted by Judge Echols in an Order entered May 4, 2005 (Docket Entry No. 4). Judge Echols' Order also determined that Plaintiff's case was not facially frivolous, directed that process should issue, and referred this case to the undersigned. Docket Entry No. 4.

The original Defendants filed a Motion to Dismiss on July 22, 2005 (Docket Entry No. 15), to which Plaintiff responded (Docket Entry No. 19). On September 13, 2005, the undersigned submitted a Report and Recommendation recommending that Defendants' Motion to Dismiss be granted. Docket Entry No. 20. On November 10, 2005, Judge Echols accepted the undersigned's recommendation to dismiss all claims against the individual Defendants, but rejected the undersigned's recommendation to dismiss the claims against the Montgomery County Sheriff's Department.[1] Docket Entry No. 21. Judge Echols' Order states in pertinent part:

> Thus, Plaintiff's allegations that the Montgomery County Sheriff's

---

[1] The only remaining Defendant is the Montgomery County Sheriff's Department.

> Department adopted, but failed to follow, an official policy permitting Muslim worship services and that the Sheriff's Department exercised an official preference for certain forms of religion over others are sufficient to state a claim for violation of the First Amendment such that Defendants should be required to respond to these allegations of the Complaint.

*Id*., p. 2.

Judge Echols also determined that Plaintiffs' First Amendment claims arising prior to April 21, 2004, were barred by the applicable statute of limitations. *Id*. at 3.

Defendant Montgomery County Sheriff's Department filed the pending Motion for Summary Judgment, supporting Memorandum of Law, and Statement of Undisputed Material Facts on February 13, 2006. Docket Entry Nos. 27-29. Defendant contemporaneously submitted the Affidavit with Exhibits of Jail Chaplin Ted Denny. Docket Entry Nos. 30-1 to 30-4. Defendant argues that "Plaintiff's case is insufficient factually," and that Plaintiff has not demonstrated that "any of his First Amendment rights have been improperly or unconstitutionally impinged upon." Docket Entry No. 29-1. Defendant maintains that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. *Id.*

As has been noted, Plaintiff has not responded to Defendant's Motion or Statement of Undisputed Material Facts.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment be DENIED IN PART and GRANTED IN PART.

## **II. Facts**

Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed. These facts are set forth in the Affidavit of Ted Denny, Jail Chaplain of the

Montgomery County Jail, and the Exhibits thereto. Docket Entry No. 30.

Plaintiff was incarcerated in the Montgomery County Jail ("Jail") from March 4, 2003 through March 23, 2004, whereupon he was released on probation. Docket Entry No. 30-1, Affidavit of Jail Chaplain Ted Denny ("Denny Aff."), ¶ 2. Plaintiff violated the terms of his probation and was returned to the Jail from September 28, 2004 through February 28, 2005. *Id.*

Shortly after Plaintiff's incarceration at the Jail began, he started to file grievances seeking to establish "Jumu'ah" services (Friday Muslim prayer services).[2] Denny Aff., ¶ 3. Plaintiff's grievances also expressed his desire to conduct, lead, and preside over the services. *Id.* During the entire period of Plaintiff's incarceration, he claimed to be a qualified Imam,[3] and sought to take a leadership role in establishing and conducting the Friday Muslim prayer services. *Id.*, ¶ 4. After receiving Plaintiff's grievances about there being no Jumu'ah services at the Jail, and at the Plaintiff's own request and initiative, Jail officials attempted to establish Jumu'ah services for Plaintiff. Denny Aff., ¶ 11.

As Plaintiff avers, the Prisoner Rule and Handbook ("Handbook") specifically provides at page 35: "Religious Services are normally conducted on Saturdays for Christians, and Fridays for Muslims. Days and time are subject to change." Denny Aff., ¶ 5. Despite the Handbook provision, however, Friday Muslim services were not regularly conducted during the period of Plaintiff's incarceration. *Id.* While Islamic prayer services were not prohibited at the Jail, such services were not conducted on a regular basis at the Jail. *Id.*, ¶¶ 5, 22.

---

[2] Throughout the Affidavit of Ted Denny, Friday prayer services are referred to as "Jumu'ah."

[3] An "Imam" is a Muslim minister. Denny Aff., ¶ 4.

4

The Montgomery County Sheriff's Department has also adopted an "Official Policy" with regard to inmate religious services, which was in place during the time of Plaintiff's incarceration. Denny Aff., ¶ 6. Montgomery County Sheriff's Department Policy Number 10.13, which governs inmate religious services, states as follows:

> TOPIC: Inmate Religous services
>
> *Religious services are provided and made available for all inmates at this facility.* These services are of a nondenominational nature, and attendance at these services is strictly voluntary. No inmate will be required to participate in any religious service against his/her will.
>
> Persons wishing to come to the jail, and conduct a religious service, must be approved by the jail chaplain.
>
> Church volunteers may bring tape players that do not record, with them to the jail for the service.
>
> Only four (4) volunteers will be allowed into the jail at any given time to conduct church services.
>
> Church volunteers will be allowed into the jail at any given time to conduct church services.
>
> All volunteers will be required to fill out a questionnaire furnished by the jail prior to visiting the jail.
>
> The jail chaplain will be responsible for creating and updating a list of rules and regulations to be adhered to by the volunteers. This list will be approved by the jail administrator, and will be given to the volunteer by the jail chaplain.
>
> Volunteers will not insight inmates against the facility or to take actions against the jail or this department.
>
> Any violation of jail rules and regulations may be grounds for suspension of privileges.

5

Denny Aff., Ex. C (emphasis added).[4]

In discussing the "policies" of the Montgomery County Jail, Mr. Denny's Affidavit refers only to the "Rule and Handbook" and Policy No. 10.13, both of which were quoted above. Mr. Denny's Affidavit, however, attempts to add additional provisions to the policies, which simply are not included in the policies. For example, Mr. Denny states:

> The official policies regarding inmate religious services do not prevent any specific religion, whether it be Christian, Muslim, Buddhist, Wiccan, Satanist or any other creed or religion from holding religious ceremonies at the jail, *provided that there is an outside religious leader or volunteer who can be located and obtained to conduct and preside over the services*, and provided that such volunteers approved by the Jail Chaplain, notifies the jail in advance of such services. (See Policy 10.13 at "Exhibit C.")

Denny Aff., ¶ 8 (emphasis added.)

Policy 10.13, however, states: "Religious services are provided and made available for all inmates at this facility." The Prisoner Rule and Handbook also states that religious services for Muslims are normally conducted on Fridays. While the policy does discuss "volunteers," there is simply no requirement that "an outside religious leader or volunteer" must be available to conduct and preside over the services before the services can be held.

Additionally, Mr. Denny's Affidavit contains the following statement:

> 5. Although Prisoner Rule and Handbook specifically provides at page 35, "Religious Services are normally conducted on Saturdays for Christians, and Fridays for Muslims. Days and times are subject to change," such Friday Muslim services were not

---

[4] While it might be argued that Policy No. 10.13 applies only to "nondenominational" religious services, and not to Muslim services, most of Defendant's arguments are based upon the proposition that Policy No. 10.13 applies to Plaintiff and his claims regarding Muslim religious services. That being the case, the Court will accept Defendant's position that Policy No. 10.13 applies to Plaintiff and Muslim religious services.

6

> regularly conducted during the period of the Plaintiff's
> incarceration as the aforementioned handbook provision would
> imply such services would be held, *as no request for Muslim
> Services had been made.*

Denny Aff., ¶ 5. Neither the Handbook nor Policy No. 10.13, however, conditions the provision of Muslim services upon a request for such services.

Mr. Denny's Affidavit further states:

> Islamic prayer services are, in fact, permitted to be conducted at
> the Montgomery County Jail, although such services are not
> conducted or provided by the Jail Chaplains or jail staff, and
> although such services are not regularly scheduled on Fridays as
> the Prisoner Rule and Handbook would imply. Instead, group
> Muslim Worship services are allowed only when an outside
> religious leader or volunteer is located and obtained to lead,
> conduct, and supervise such services *pursuant to Policy 10.13.* . . .

Denny Aff., ¶ 10.

As discussed above, however, there is no requirement in Policy 10.13 that Muslim services are "allowed only when an outside religious leader or volunteer is located and obtained to lead, conduct and supervise such services . . . ."

Despite the plain language of the policies, Defendant did not provide religious services for Muslims, except on four occasions during the 18 month period of time Plaintiff was incarcerated. Denny Aff., ¶¶ 14, 22. Defendant did, however, make a number of attempts to have an outside Imam come to the Jail to conduct Muslim religious services.

From April 14, 2003 to April 25, 2003, Sgt. D. Kowal unsuccessfully attempted to reach Mr. James (Abdur-Razaq) Brown, a Muslim Cleric and Imam who had previously registered with the Jail as a minister, regarding his conducting Jumu'ah services at the Jail. Denny Aff., ¶ 12. After being unable to reach Mr. Brown by telephone, Sgt. Kowal traveled to Mr. Brown's

7

last known address and left a letter at that address requesting that Mr. Brown contact Sgt. Kowal. *Id.* After receiving no contact from Mr. Brown, Sgt. Kowal and Deputy Collins returned to the last known address of Mr. Brown, where they were greeted by the new renters of the house. *Id.* The new renters returned the previously-left letter to Sgt. Kowal and provided the telephone number of the landlord. *Id.* Sgt. Kowal was unable to reach the landlord, however, and Sgt. Kowal's search for Mr. Brown ceased. *Id.*

Lieutenant Somers attempted to contact someone in charge of religious services for the Tennessee Department of Corrections ("TDOC") to request assistance in locating someone to conduct Muslim services, and was referred to Mr. John Swires, Senior Chaplain for Middle Tennessee Reception Center in Nashville. Denny Aff., ¶ 13. On May 7, 2003, after three telephone calls, Mr. Swires contacted Lt. Somers. *Id.* Mr. Swires provided the name of Mr. Abdullah Yosef, who had conducted Muslim services for Mr. Swires in the past. *Id.* Mr. Yosef was contacted on May 13, 2003, and agreed to come and minister to the Muslim population at the Jail. *Id.*

A memorandum was distributed to all prisoners announcing that Jumu'ah would be held on May 30, 2003, and informing the prisoners that a sign-up sheet would soon be passed around. Denny Aff., ¶ 14. Plaintiff and one other prisoner signed up to attend services. *Id.* Jumu'ah was held at the Jail on May 20, 2003.[5] *Id.* After conducting the service, Mr. Yosef informed the Jail Chaplain that he would not return to minister to Plaintiff because of Plaintiff's "attitude." *Id.*

---

[5] Paragraph 14 of Mr. Denny's Affidavit states that a memorandum was distributed to all prisoners informing them that Jumu'ah would be held on May 30. That paragraph also states, however, that Jumu'ah occurred on May 20. It is unclear whether one of those dates is a typographical error, or whether Paragraph 14 refers to two separate services. If the dates refer to two separate services, it is unclear whether the May 30 service actually occurred.

8

In an attempt to procure another member of the Islamic clergy to conduct the prayer services requested by Plaintiff, Jail officials contacted Mr. Joseph Harmon, an Imam, who agreed to minister to Plaintiff at 1:00 p.m. every other Friday. Denny Aff., ¶ 15. Mr. Harmon conducted at least two Islamic prayer services at the Jail with Plaintiff, but cancelled a July 18, 2003 service. *Id.* On September 17, 2003, Mr. Harmon informed Lt. McCrobie at the Jail that he could no longer conduct the Muslim services that were being held at the Jail every other Friday, and that he would find another qualified person to conduct the services. *Id.*, ¶ 16.

On September 25, 2003, Lt. McCrobie contacted Mr. Harmon regarding the upcoming Friday service. Denny Aff., ¶ 16. On September 26, 2003, Mr. Harmon contacted Deputy Perez and informed him that he would not be conducting any further Islamic services, and that he had not found a replacement Imam. *Id.*

No further Islamic services were conducted at the Jail. *Id.*

Plaintiff filed a grievance on December 29, 2003. Denny Aff., ¶ 17. In response to that grievance, Lt. Armstrong asked Plaintiff to provide the contact information for an Imam so that the Jail could contact that person to conduct Islamic services at the Jail (or to refer the Jail to someone else who could). *Id.* Plaintiff did not provide contact information for any Islamic clergy. *Id.*

In January 2004, in an attempt to procure another Imam to minister to the Jail, Lt. Armstrong logged onto an Islamic Website and obtained the names and telephone numbers of practicing Muslims in the Clarksville area.[6] Denny Aff., ¶ 18. This effort proved unsuccessful.

---

[6] There are no Islamic Mosques or Islamic places of worship in Clarksville or Montgomery County, Tennessee. Denny Aff., ¶ 21.

*Id.* Thereafter, Jail Chaplains and staff stopped actively searching for another Imam, instead placing the burden of locating and obtaining Muslim clergy on Plaintiff.[7] *Id.*, ¶ 19.

Jail Chaplains and staff stopped actively searching for Muslim clergy because of (1) the small size of the Muslim population of the Jail, (2) the fact that no inmates, other than Plaintiff, were interested in having Muslim prayer services, (3) the difficulty in locating, obtaining, and retaining Muslim clergy, and (4) because continuing to actively try and locate Muslim clergy to perform the services, and the continued observance of such services for only one inmate, would disproportionately and significantly impact the allocation of Jail resources and funding. Denny Aff., ¶ 19.

During the time of Plaintiff's incarceration at the Jail, Plaintiff was the only inmate who openly identified himself as Muslim, and was the only prisoner who requested Friday Jumu'ah services.[8] Denny Aff., ¶ 20. The Jail, however, does not require that a minimum number of inmates be interested in services before such services are established. *Id.*, ¶ 25. The Jail requires only that an outside religious leader or volunteer preside over and supervise such services as prerequisites to such services being held. *Id.*

Plaintiff was not prohibited from having Islamic clergy or Imams from outside the facility come to the Jail and conduct Jumu'ah services in the Chapel, or from having clergy come to the Jail and pray with him individually. Denny Aff., ¶ 9. During the period of Plaintiff's

---

[7] Presumably, Plaintiff's ability to conduct such a search was hampered by his status as a Jail inmate.

[8] While Mr. Denny's Affidavit states that Plaintiff "was the only prisoner who requested or expressed any interest in Friday Hislamic Jumu'ah services," the Court notes that at least one inmate other than Plaintiff signed up to attend the May 30, 2003, Jumu'ah service. Denny Aff., ¶ 14.

10

incarceration, the Jail experienced difficulties in locating and obtaining an Imam to minister to the Jail's Muslim population or to conduct Jumu'ah. *Id.*, ¶ 26.

Plaintiff participated in four Muslim prayer services, one of which he was permitted to conduct himself. Denny Aff., ¶ 22. It was later determined that Plaintiff should not be permitted to conduct religious services for other inmates because it had been the policy and practice of the Jail to only allow religious services to be conducted by outside religious leaders and volunteers, not other inmates, due to security concerns. *Id.*, ¶ 26. The Jail's prohibition on inmate-led groups and services, and the accompanying requirement of an outside religious leader or volunteer, exists to avoid the risks that would arise from unsupervised inmate activity and the creation of an alternative, inmate-led power structure in the Jail, and is related to the Jail's interest in maintaining Jail security.⁹ *Id.*, ¶ 32.

Plaintiff was informed that he would not be permitted to conduct further services, that an exception had been made for the April 25, 2003 service that he had conducted, and that another exception would not be made. Denny Aff., ¶ 28. After being informed that he would not be permitted to conduct further services, Plaintiff filed numerous grievances reiterating his belief that he was qualified and entitled to lead Jumu'ah services, and alleging that the Jail was discriminating against him by prohibiting him from leading such services. *Id.* During the time of Plaintiff's incarceration, no other inmates of any faith were permitted to preside over services for other inmates. *Id.,* ¶ 27.

Islamic services were not regularly provided by the Jail because of (1) the lack of interest

---

⁹ Plaintiff's Complaint does not raise a claim that he was deprived of any rights because he himself could not conduct Jumu'ah services, nor does Plaintiff's Complaint seek any relief concerning that issue. That issue, therefore, is not before the Court.

11

in the services, (2) the Jail staff's inability to conduct Muslim services, (3) the small Muslim population of the Jail, (4) the Jail officials' difficulty and inability to locate and obtain an outside religious leader, volunteer, or Imam to conduct and supervise Friday prayer services, and (5) the disproportionate and significant impact on the allocation of the Jail's human and financial resources given the small Muslim population at the Jail. Denny Aff., ¶ 23.

Plaintiff had alternative means of exercising his free exercise rights and was not deprived of all means of religious expression. Denny Aff., ¶ 33. Plaintiff was permitted to, and did in fact, possess his Koran throughout his period of incarceration. *Id.* Plaintiff was permitted to possess a prayer rug and pray in his cell. *Id.* Plaintiff was given a compass so that he could ascertain which direction was East (the direction to which he prays). *Id.* Plaintiff was free to consult with a personal minister or attend the regularly scheduled nondenominational Christian services if he so desired. *Id.* Plaintiff was permitted to have his own clergy come to the Jail and conduct Muslim worship services pursuant to Policy Number 10.13. *Id.*

Plaintiff was permitted to wear Kufi headgear, while other prisoners were not permitted to wear headgear. Denny Aff., ¶ 33. During the Muslim holy month of Ramadan, Plaintiff was given special meals and double portions at breakfast so that he could fast through lunch in accordance with his religious beliefs. *Id.* Plaintiff was permitted to refuse medical treatment from a female doctor based upon his religious beliefs, and was allowed to reschedule his appointment for a time when a male doctor would see him. *Id.* Plaintiff was free to correspond and communicate with other Muslims and free to discuss his religion with whomever he chose. *Id.*

The Jail does not apply or enforce T.C.A. 41-21-211, which provides, "Each inmate shall

12

be provided with a Bible, which the inmate may be permitted to peruse in such inmate's cell, at such times as the inmate is not required to perform prison labor." Denny Aff., ¶ 34. The Jail does not provide all inmates with a Bible, nor does the Jail require the dissemination of Bibles to any prisoners at the Jail. *Id.* The Jail does not purchase religious books for inmates, regardless of religion. *Id.* The Bibles that are available for inmates to read in the Jail library are donated by religious organizations and are not purchased by the Jail. *Id.* Inmates are permitted to check out the Bibles upon request. *Id.* No Korans have been donated to the Jail library, and the Jail library does not have any have any Korans. *Id.* The Jail would accept the donation of any Korans and make them available to inmates to check out from the Jail library. *Id.*

Inmates are free to possess whatever religious books they choose while incarcerated in the Jail. Denny Aff., ¶ 34. Plaintiff was not deprived of his Koran. *Id.* On February 4, 2003, Plaintiff was given his "Holy Qur-an" from his personal property to take to his cell.[10] *Id.* On June 26, 2003, Plaintiff complained about not being able to get an Arabic to English translation of the Koran, even though he possessed his personal Koran. *Id.* Plaintiff was free to have someone deliver a translated Koran to the Jail for his use. *Id.* On November 25 and 26, 2003, Plaintiff grieved that his Koran was his "Law Book," and that he was not permitted to carry his Koran into Court. *Id.*

### III.   Analysis

#### A.  Local Rules 8(b)(3) and 8(b)(7)(c) and (g)

---

[10] Although paragraph 34 of Mr. Denny's Affidavit states that Plaintiff was given his Koran from his personal property on February 4, 2003, the Court notes that Plaintiff was not incarcerated at the Jail at that time. Plaintiff did not arrive at the Jail until March 4, 2003, one month later.

13

Local Rule 8(b)(3) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than ten (10) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty (20) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

As has been noted, Defendant filed the pending Motion on February 13, 2006. Docket Entry No. 27. Plaintiff has failed to respond to Defendant's Motion.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted).

Additionally, the Court notes that Plaintiff has failed to respond to Defendant's Statement of Undisputed Material Facts. While Local Rule 56.01(g) provides that a party's failure to respond to a moving party's Statement of Material Facts shall indicate that the asserted facts are not disputed for purposes of summary judgment, the Court notes that many of the "undisputed facts" asserted by Defendant based upon Mr. Denny's Affidavit are not specifically set forth in Defendant's written policies. Thus, where appropriate, the Court will decline to accept certain

14

"facts" set forth in Defendant's Statement of Undisputed Material Facts, and the Court will consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983**

Plaintiff alleges violations of his First Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket Entry No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

16

**D. The Case at Bar**

The relevant provisions of the First Amendment, which are made applicable to the States by the Fourteenth Amendment, provide that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., Amend. 1. Plaintiff raises claims under both the Establishment Clause and the Free Exercise Clause of the First Amendment.

### 1. Free Exercise Claims

Plaintiff claims that he was denied the right to freely exercise his religion because Defendants failed to provide religious services for Muslims despite their own policies requiring them to do so.

As discussed above, the Affidavit of Jail Chaplain Ted Denny makes a number of statements concerning "policies" of the Montgomery County Jail. While it may well be that Jail officials have interpreted the actual written policies in the manner stated by Mr. Denny, this Court must construe the policies as they are actually written for at least two reasons.

First, Plaintiff is not arguing that Defendant had a policy which deprived him of his constitutional rights. Instead, Plaintiff is arguing that Defendant had a policy that provided him the right, consistent with his First Amendment rights, to have Muslim services conducted. As discussed above, Policy 10.13 specifically states, "Religious services are provided and made available for all inmates at this facility." Additionally, the "Rule and Handbook" provides, "Religious services are normally conducted on Saturdays for Christians, and Fridays for Muslims." Thus, Defendant's own policies require Defendant to provide Muslim worship services for "all inmates," including Plaintiff.

17

Case 3:05-cv-00358   Document 36   Filed 07/07/06   Page 17 of 20 PageID #: 252

Second, as discussed above, Judge Echols has previously ruled that, "Plaintiff's allegations that the Montgomery County Sheriff's Department adopted, but failed to follow, an official policy permitting prisoner Muslim worship services . . . are sufficient to state a claim for violation of the First Amendment . . . ." Docket Entry No. 21, p. 2. The Court recognizes that, even though Judge Echols determined that Plaintiff has stated a claim for a violation of the First Amendment, Defendant can still obtain summary judgment, if Defendant shows that: (1) there are no genuine issues as to any material fact, and (2) that Defendant is entitled to a judgment as a matter of law.

But the undisputed facts show that Defendant did not provide Muslim religious services for Plaintiff (except on 4 occasions), despite its own policies requiring it to do so. Thus, Defendant cannot be entitled to a judgment as a matter of law.

In the instant Motion, Defendant attempts to focus the Court's attention away from the actual language of the policies, apparently in an effort to establish that it made "reasonable efforts" to provide Muslim worship services for Plaintiff. The language of Defendant's policies, however, requires much more than "reasonable efforts."

Defendant also relies upon *Spies v. Voinovich*, 173 F.3d 398 (6th Cir. 1999), which cites *Turner v. Safley*, 482 U.S. 78 (1987). As Defendant recognizes, however, *Turner* stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. At 89. The case at bar, however, does not involve a prison regulation that impinges upon Plaintiff's rights. Instead, this case involves jail policies that provide rights, which are grounded in the First Amendment, for Plaintiff. Thus, *Spies* and *Turner* are inapposite.

18

In summary, the undersigned concludes that there is no genuine issue as to material fact concerning the requirements of Defendant's policies. Defendant, however, is not entitled to a judgment as a matter of law concerning Plaintiff's claims that Defendant adopted, but failed to follow its own official policies. Therefore, Defendant's Motion for Summary Judgment with regard to Plaintiff's Free Exercise claims should be DENIED.

### 2. Establishment Clause Claims

Plaintiff has also raised claims that Defendant exercised an "official preference for localized forms of religion over non-localized forms," arguing that T.C.A. § 41-21-211 "requires dissemination of Bibles to prisoners, but does not likewise require distribution of the Holy Quran to Muslims." Docket Entry No. 1. T.C.A. § 41-21-211 provides, "Each inmate shall be provided with a Bible, which the inmate may be permitted to peruse in such inmate's cell, at such times as the inmate is not required to perform prison labor."

Defendant concedes that T.C.A. § 41-21-211 "violates the Establishment Clause of the First Amendment." Docket No. 29-1, p. 21. Defendant argues, however, that the Affidavit of Ted Denny establishes that Defendant "does not apply or enforce T.C.A. § 41-21-211." Denny Aff. ¶ 34. In fact, Defendant does not provide inmates with a Bible and does not purchase Bibles for inmates. *Id.* Instead, the Bibles that are in the jail library have been donated by religious organizations such as the Gideons. *Id.* There are no Korans in the Montgomery County Jail library because none have been donated. Defendant, however, would accept any donation of Korans and would make those available to inmates to check out from the Jail library. *Id.* Additionally, Plaintiff does not dispute that he was allowed to have his own Koran.

Thus, the undisputed facts show that Plaintiff cannot establish any injury that he suffered

19

because of the operation of T.C.A. § 41-21-211.

For the foregoing reasons, the undersigned concludes that Defendant is entitled to summary judgment with regard to Plaintiff's Establishment Clause claims.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion for Summary Judgment should be DENIED with regard to Plaintiff's Free Exercise claims. Defendant's Motion for Summary Judgment should be GRANTED with regard to Plaintiff's Establishment Clause claims.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

20