```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                         NASHVILLE DIVISION

ABDULLAH L. HA'MIN,                )
                                   )
        Plaintiff,                 )
v.                                 )
                                   )    No. 3:05-0358
MONTGOMERY COUNTY SHERIFF'S,       )    JUDGE ECHOLS
NORMAN LEWIS, LT. ARMSTRONG,       )
DEP. DENNY, SGT. REYNOLDS,         )
DEP. SMOTHERS,                     )
                                   )
        Defendants.                )
```

### MEMORANDUM

Pending before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Docket Entry No. 36), to which the remaining Defendant, the Montgomery County Sheriff's Department, filed objections (Docket Entry No. 38) with supplementary case citations (Docket Entry No. 39). Plaintiff Abdullah L. Ha'min failed to respond to Defendant's Motion for Summary Judgment, which included a Statement of Undisputed Material Facts (Docket Entry No. 28). Under Local Rule 56.01(g), Plaintiff's failure to respond to the facts as stated by the Defendant establishes that the facts are undisputed for purposes of summary judgment. The undisputed facts of the case are thoroughly set forth in the R&R, and the Court sees no need to recite the facts here.

In determining whether Defendant is entitled to summary judgment as a matter of law, the Magistrate Judge recommended granting Defendant's Motion for Summary Judgment in part as to the First Amendment Establishment Clause claim, but denying the motion in part as to the First Amendment Free Exercise Claim. For the

1

reasons stated below, the Court concludes that Defendant's summary judgment motion should be granted in its entirety.

## I. STANDARDS OF REVIEW

When a party makes timely objections to an R&R, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3); Fed.R.Civ.P. 72(b).

A party may obtain summary judgment if the evidence establishes there is not a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if

2

appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. <u>Celotex</u>, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## **II. ANALYSIS**

**A. Establishment Clause claim**

The Court is in full agreement with the Magistrate Judge that Plaintiff Ha'min, a Muslim, failed to establish any constitutional injury he suffered because of the existence of Tenn. Code Ann. § 41-21-211. That statute provides: "Each inmate shall be provided with a Bible, which the inmate may be permitted to peruse in such inmate's cell, at such times as the inmate is not required to perform prison labor." Defendant concedes that this statute, dating unamended from 1829, violates the Establishment Clause under <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971); however, Defendant produced evidence that it does not apply or enforce the statute at the Montgomery County jail where Plaintiff was incarcerated. (Affidavit of Chaplain Ted Denny at ¶ 34.)

The evidence shows that Defendant does not provide inmates with Bibles or purchase Bibles for inmates. Donated Bibles are

3

kept in the jail library and are available for check-out by inmates. There are no copies of the Holy Quran in the jail library because none have been donated, but Defendant represents it would make available to inmates any copies of the Holy Quran that are donated. The evidence further shows Plaintiff asked to retrieve his copy of the Holy Quran from his personal property, his request was granted, and Plaintiff was permitted to keep his Holy Quran in his cell. Because Defendant has produced sufficient evidence that it did not promote one religion over another by enforcing Tenn. Code Ann. § 41-21-211 against Plaintiff, Defendant is entitled to summary judgment on Plaintiff's Establishment Clause claim.

**B. Free Exercise claim**

The Court cannot agree that Defendant failed to show its entitlement to summary judgment on Plaintiff's Free Exercise claim. Contrary to the Magistrate Judge's ruling, Defendant's written and unwritten policies and regulations are subject to evaluation under <u>Turner v. Safley</u>, 482 U.S. 78 (1987). Having conducted an independent analysis under <u>Turner</u>, the Court concludes that Defendant's policies and regulations applicable to the free exercise of religion pass constitutional muster in this case.

The Prisoner Rule and Handbook provides at page 35 (emphasis added) that "Religious Services are *normally* conducted on Saturdays for Christians, and Fridays for Muslims. *Days and time are subject to change.*" Chaplain Denny admitted that, despite the handbook provision, a Friday Muslim prayer service was not regularly

4

conducted during the period of Plaintiff's incarceration.[1]  In light of Chaplain Denny's admission, the Magistrate Judge ruled the inquiry at an end and did not engage in any analysis of whether Defendant's explanation of its reasons for not providing a Muslim service satisfied the four Turner factors.  Cf. McRoy v. Cook County Dept. of Corrections, 366 F.Supp.2d 662, 678-679 (N.D. Ill. 2005) (denying First Amendment claim and engaging in Turner analysis to evaluate reasons why Muslim service did not take place even though written policy set day and time of service). Similarly, the Magistrate Judge quoted Defendant's Policy Number 10.13, governing nondenominational inmate religious services, and focused on the opening sentence:  "Religious services are provided and made available for all inmates at this facility."  Because Chaplain Denny admitted that Muslim services were not regularly provided during Plaintiff's incarceration, the Magistrate Judge did not conduct a Turner analysis.  The Magistrate Judge declined to give any weight to Chaplain Denny's explanations of how the written policies were carried into practice on the ground that such explanations could not vary the express language of the written policies.

The Court concludes that such an approach was error.  As Defendant points out in its objections, in numerous cases the

---

[1] Because the Court previously ruled that Plaintiff's claims are subject to the one-year statute of limitations for civil rights actions, Tenn. Code Ann. § 28-3-104; Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1984), only the year prior to April 21, 2005, the date Plaintiff submitted his pro se Complaint for filing, is relevant to the Court's analysis.

5

courts have applied the Turner factors to actions of jail or prison officials other than those memorialized in written policies, analyzing also "burdens," "prohibitions," "infringing actions," and procedures or regulations which have an effect on a prisoner's free exercise rights. See e.g. O'Lone v. Estate of Shabazz, 482 U.S. 342, 347 (1987) (applying Turner to a prison operating procedure that precluded Muslim inmates from returning to prison from day work details to attend Friday afternoon Muslim prayer service); Abdur-Rahman v. Michigan Dept. of Corrections, 65 F.3d 489, 491 (6th Cir. 1995)(same).

The Supreme Court has instructed that when an action of prison officials impinges on an inmate's constitutional rights, the action or regulation is valid only if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. The first factor the Court must consider is whether there is a valid, rational connection between the prison action or regulation and the legitimate governmental interest put forward to justify it. Id. at 89-90. If not, the regulation is unconstitutional, and the remaining three Turner factors do not matter. Spies, 173 F.3d at 403. The next three factors may be balanced together: "(2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) 'the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (4) whether there are 'ready alternatives' available 'that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.'" Id. (quoting Turner, 482 U.S. at 90-91).

6

In this case, Plaintiff Ha'min claimed in his Complaint only that Defendant's failure to follow its own written prison policy providing for a Friday Muslim service violated his free exercise rights. But the policy itself stated that a Muslim service was "normally" provided on Friday and that days and time were subject to change. Chaplain Denny explained that, before Plaintiff was admitted to the jail, Muslim services were not routinely provided for lack of interest, but once Plaintiff made known his request for a Muslim service, jail officials took numerous steps, outlined in the R&R, to locate an Imam who would provide a Muslim religious service for Plaintiff and any other interested inmate. The first Imam obtained by jail officials refused to return after his first visit because of Plaintiff's "attitude." The second Imam conducted two services before informing jail officials that he could not continue. Although the second Imam agreed to find his replacement, he did not do so. Jail officials searched the local area for Muslim religious contacts and communicated with the state prison system about potential assistance. When these avenues failed to generate any leads, jail officials asked Plaintiff to suggest someone who could be contacted to provide him with a religious service. The evidence shows Plaintiff did not provide any names. The First Amendment does not require a prison to provide a Muslim religious leader at state expense, see Thompson v. Commonwealth, 712 F.2d 1078, 1080 (6th Cir. 1983), but here, jail officials at least attempted to locate an Imam to accommodate Plaintiff's request for a religious service.

Although Plaintiff did not include in his Complaint any allegations about the jail's refusal to allow him to conduct the Muslim service for himself and any other interested inmate(s), the evidence shows that the jail uniformly enforced a requirement that only volunteer religious leaders from outside the jail could come into the jail to perform religious services, no matter which religion was at issue. Chaplain Denny explained the reason for this restriction was to assure jail security and to preclude the formation of an inmate-led power structure in the jail. See Shabazz v. Norris, 934 F.2d 322, 1991 WL 90894 at *3 (6th Cir. 1991) (concluding that requirement of an outside sponsor during religious service was reasonably related to the state's legitimate penological interests in preserving jail security). Plaintiff was allowed to conduct a service on one occasion, but he was later informed that was an exception, and he would not be allowed to lead another service. Even if Plaintiff had raised in his Complaint the jail's refusal to allow him to serve as Imam as a violation of his constitutional rights, the Sixth Circuit rejected a similar claim in Spies, 173 F.3d at 405-406.

Defendant has shown through sufficient evidence that there is a valid, rational connection between the jail's action in not providing a regular Friday Muslim service and the legitimate governmental interest put forward to justify the failure to provide such a service. See Turner, 482 U.S. at 89-90. Moreover, Defendant's evidence shows that Plaintiff had alternative means of exercising his right to the free exercise of religion because he was allowed to keep his Holy Quran in his cell, he was provided a

8

compass so that he could determine which direction was East for the purpose of prayer, he was provided a prayer rug in his cell so that he could conduct prayer as he wished, and he was allowed to wear a "kufi," a hat or turban significant to his religion. Defendant produced evidence to show that it responded to each of Plaintiff's grievances, and it made many attempts to procure the services of an Imam, but that its continued efforts would adversely impact the allocation of prison resources, particularly when Plaintiff was the only prisoner expressing an interest in a regular Muslim service. Finally, Plaintiff did not come forward with any "ready alternatives" that were available to fully accommodate his right to freely exercise his religion at de minimis cost to valid penological interests. See id. at 90-91; O'Lone, 482 U.S. at 350. Where Plaintiff was permitted to practice his Islamic religion at the jail facility, his First Amendment rights were satisfied. See Simmons v. United States Correction Corp., 991 F.2d 796, 1993 WL 96861 at *2 (6th Cir. 1993).

## III. CONCLUSION

For all of these reasons, the Court concludes that Defendant's objections will be sustained and that the R&R will be accepted in part and rejected in part. Further, Defendant's Motion for Summary Judgment will be granted in its entirety.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

9

Case 3:05-cv-00358   Document 45   Filed 07/21/06   Page 9 of 9 PageID #: 352